UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re:<br><br>Joseph Samuel Larzelere, Jr.,<br><br>Debtor | Case No.: | 17-34411-ABA |
|---|---|---|
| | Chapter: | 13 |
| | Judge: | Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

**I.     INTRODUCTION**

The chapter 13 trustee's objection to the debtor's Motion to Sell real property has raised the issue of what effect confirmation has on property of the estate. This court limits its decision on this issue and concludes that all property of the estate as of confirmation vests in the debtor, the estate replenishes after confirmation with new property of the estate, but that replenishment does not include appreciation in assets that vested at confirmation. Accordingly, the trustee's objection will be denied.

As to the debtor's request to pay off his plan early and the chapter 13 trustee's objections consistent therewith, such relief requires a modified plan—relief not properly sought through the Motion to Sell, and consequently, this court will not address those issues at this time.

**II.    JURISDICTION AND VENUE**

This court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a), (b)(2)(A), (N) and (O), and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 1306(a) and 1327. Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

**III.   PROCEDURAL HISTORY/RELEVANT FACTS**

The debtor filed a chapter 7 bankruptcy case on December 4, 2017. He disclosed $321,700 in assets, including his real property valued at $219,000. Doc. No. 1. The real property was encumbered by a mortgage in the amount of $172,877, and the debtor claimed an exemption of $23,325, leaving $22,798 in equity. *Id.* Allowed general unsecured claims at the time of confirmation totaled $25,312. *See* Claims Register.

After the U.S. Trustee filed a Motion to Extend Time to Object to Discharge based on the debtor's payroll deductions (three 401(k) loan repayments) and his actual/reasonable expenses (Doc. No. 15), the debtor converted to chapter 13. The debtor is an above median debtor, but his chapter 7 Means Test indicated no abuse and a negative disposable income of $258. Doc. No. 1, pp. 43-54. An amended Schedule J disclosed net monthly income of $407. Doc. No. 26.

The chapter 13 trustee objected to the debtor's "food and housekeeping supplies" expense of $600 and that he disclosed $64,490 in unsecured debt but only proposed to pay a pro rata dividend to unsecured creditors. Doc. No. 43. Presumably this was resolved between them, as on July 26, 2018, the debtor's plan was confirmed at $1,215 paid to date and $600 per month (increased from $405) to be paid for 58 months, with general unsecured creditors to be paid pro rata. Doc. Nos. 27, 45. Accordingly, the confirmed plan required a total of $36,015 to be paid by the Debtor.[1] The only source of payments was indicated to be future earnings. The plan, at Part 8, specifically provided for vesting of property of the estate at confirmation. Doc. No. 27. The order confirming the plan was silent as to vesting. Doc. No. 45. After confirmation, the IRS and the NJ Department of Taxation filed priority unsecured claims in the amounts of $8,382 and $2,999. No entity sought to modify the debtor's plan at that time.

On May 26, 2021, the debtor filed the Motion to Sell Property Free and Clear of Liens (the "Motion") that is the subject of this opinion. Doc. No. 53. There he sought approval to sell 305 Kirkland Drive, Wenohah, New Jersey (the "Wenonah Property"),[2] to Benjamin and Dana White for $348,000. A Notice of Proposed Private Sale of the Wenonah Property went out to all creditors. Doc. No. 60. Notably, this offer reflected an increase of $129,000 from the estimated value of the property at the time of filing. All costs and liens would be paid, and the debtor proposed to remit $14,105 to the chapter 13 trustee to pay the plan off in full, with the debtor retaining the remainder.

The debtor explained that since 2018, he has invested $60,000 to $70,000 on renovations to his property. Doc. Nos. 68 and 71 at ¶ 3. Of the funds he borrowed from his retirement account, $25,800 in February 2020 and $11,900 in May 2020, he used approximately 85 percent on the renovations. *Id.*, ¶¶ 4, 7. The debtor stated that, over the past four years, he invested time, sweat equity and money into his home. *Id.*, ¶ 8. He believes the higher price he received for the real property reflects that work. *Id.*, ¶ 10. The debtor's attorney suggested that the increase is also due to an inflated real estate market at this time due to the Covid pandemic. Doc. No. 68, p. 14.

With the exception of a limited objection by the secured creditor (which was resolved), no other creditor opposed the Motion. However, the chapter 13 trustee objected to the debtor's

---

[1] The court does not accept the trustee's argument that the confirmed plan included a $28,500 "base" to allowed non-priority unsecured claims, Doc. No. 70, p. 1, as neither the plan nor the order confirming the plan so state. Instead, the plan provides that allowed non-priority unsecured claims will be paid a "pro rata distribution from remaining funds." Doc. No. 27, p 4. The trustee can only enforce a base to unsecured creditors if a debtor checks off and fills in the option on the district's form plan to pay "not less than $___ to be distributed pro rata" and/or if the order confirming plan requires a base to unsecured claims.

[2] Mr. Larzelere's address on the sale contract and that of the property to be sold is listed as 305 Kirkland Drive, Wenonah, New Jersey. *See* Doc. No. 53-2. However, on the Voluntary Petition, Mr. Larzelere disclosed 305 *Hickory Ridge*, Wenonah, New Jersey, as where he lives and as the only real property he owned. Doc. No. 1, pp. 2, 10. The court presumes that Hickory Ridge is an alternate address for the Wenonah Property.

proposal to only remit $14,105 to the plan. Doc. No. 59. She argued that as the debtor is an above median debtor, he cannot complete his plan in less than 60 months unless he pays 100 percent of timely-filed claims. The amount to do so would be $35,255 ($28,500 general unsecured, $11,381 priority). The trustee argued that the proceeds of the sale are property of the estate pursuant to sections 541 and 1306, therefore the debtor should pay an additional $8,192 of the non-exempt proceeds, which she estimated at $124,823, Doc. No. 70, p. 4, into the plan. She asserted that this amount is only 5.5% additional of the net proceeds. *Id.*

The court held a hearing on the Motion to Sell on June 22, 2021, at which time it granted the motion as to the sale but directed that the proceeds be put in escrow pending this decision. Doc. No. 73. The parties declined any further briefing, thus the matter is ripe for decision.

## IV.    DISCUSSION

The parties framed the question for the court as a vesting issue, i.e., how to harmonize sections 1306 and 1327. Section 1306 provides that property of the estate in chapter 13 cases includes all property specified in section 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first," as well as "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(1), (2). *See Boddie v. PNC Bank, NA*, 2:12-CV-158, 2013 WL 443773, at *4 (S.D. Ohio Feb. 5, 2013) (property acquired after confirmation of the chapter 13 plan is property of the estate). It further provides that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). Section 1327(b) provides that "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Finally, section 1327(c) provides that " Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan. § 1327(c).

What then, if anything, is property of the estate in a chapter 13 case after confirmation? Several theories abound, and there is no binding precedent on this court. "[S]everal courts have suggested these provisions are difficult to reconcile, and may even be impossible to reconcile." *In re Scholl*, 605 B.R. 163, 173 (Bankr. S.D. Ohio 2019) (internal quotation omitted).

In *In re Tarby*, 11-32886/JHW, 2012 WL 1390201 (Bankr. D.N.J. Apr. 20, 2012), the court rested on a definition of "vest" that merely gave "an immediate, fixed right of present or future enjoyment," *id.*, at *3, to conclude that:

> property of the estate retains its status as such, even through confirmation of the debtor's Chapter 13 plan, until dismissal, closure or conversion of the case, as § 1306(a) provides. At confirmation, the "vesting" of property of the estate in the debtor, as provided in § 1327(b), means that the debtor's rights and interest in the

> property become fixed as of the confirmation of the plan, and are effected when the provisions of the debtor's Chapter 13 plan are satisfied.

*Id.*, at *4. This has been referred to as an "estate preservation theory." *In re Baker*, 620 B.R. 655, 663 (Bankr. D. Colo. 2020).

An "estate termination" approach holds that at confirmation, "the estate ceases to exist and all property of the estate, whether acquired before or after confirmation, becomes property of the debtor." *Baker*, at 663.

The estate preservation approach, in holding that all property of the estate remains so after vesting, has been criticized as putting all its weight on section 1306(a) while ignoring section 1327(b) "largely . . . as mere surplusage." *In re Clouse*, 446 B.R. 690, 700 (Bankr. E.D. Pa. 2010). *See In re Baker*, 620 B.R. at 699 (stating this view "essentially read[s] 1327(b) out of the Code."). Similarly, the estate termination approach suffers from relying on section 1327(b) while ignoring section 1306(a). *Id. In re Holden*, 236 B.R. 156, 161 (Bankr. D. Vt. 1999), *aff'd sub nom. United States v. Holden*, 258 B.R. 323 (D. Vt. 2000) (stating that estate termination approach renders section 1306(a) "toothless."). The Supreme Court recently reminded courts not to ignore Code sections: "'The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.'" *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 591 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)). *See Schwab v. Reilly*, 560 U.S. 770, 784 (2010) (declining to construe exemptions "in a manner that elides the distinction" between various Code provisions).

Two middle ground theories attempt to solve these issues. The estate transformation approach holds that "[a]t confirmation, all property of the estate becomes property of the debtor except property essential to the debtor's performance of the plan; the Chapter 13 estate continues to exist, but it contains only property necessary to performance of the plan, whether acquired before or after confirmation." *Baker*, 620 B.R. at 663. The estate replenishment (a/k/a reconciliation) approach also provides that at confirmation, all property of the estate becomes property of the debtor, but then provides that the estate then refills, regardless of whether or not that property is necessary to carry out the plan. *Id.*

The Circuit Courts of Appeals to have addressed the issue are not in agreement. *See In re Jones*, 420 B.R. 506, 515 (B.A.P. 9th Cir. 2009) *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011) (following estate termination approach); *Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1339–40 (11th Cir. 2000) (estate transformation); *In re Barbosa*, 236 B.R. 540, 550 (Bankr. D. Mass. 1999), *aff'd sub nom. Barbosa v. Solomon*, 243 B.R. 562 (D. Mass. 2000), *aff'd,* 235 F.3d 31 (1st Cir. 2000) (following estate replenishment approach); *In re Talbot*, 124 F.3d 1201, 1208 (10th Cir. 1997) (stating without discussion that house revested in debtors at confirmation pursuant to section 1327(b)); *Black v. U.S. Postal Serv. (In re Heath),* 115 F.3d 521, 524 (7th Cir. 1997) (estate transformation). *See also In re Goldston*, 627 B.R. 841, 864 (Bankr. D.S.C. 2021) (stating that "The Fourth Circuit has expressly avoided reconciling the interplay between §§ 1306(a) and 1327(b)."); *Sec. Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993) (holding that estate exists after confirmation even if it holds no property).

In those circuits that have not visited the issue, *Barbosa's* replenishment approach may be the majority. *In re Wilson*, 555 B.R. 547, 552 (Bankr. W.D. La. 2016) (citing *United States v. Harchar,* 371 B.R. 254, 268 (N.D. Ohio 2007), as being the "growing majority"); *In re Tarby*, 2012 WL 1390201, at *8 (citing *In re Jackson,* 403 B.R. 95, 99–100 (Bankr. D. Idaho 2009), for the same). *See, e.g., In re Clouse*, 446 B.R. at 701 (following replenishment approach); *In re Mullins*, BKY 98-20033, 2009 WL 3160361, at *6 (S.D. W. Va. Sept. 30, 2009) (same). *But see In re Holden*, 236 B.R. at 161 (adopting transformation approach).

Here, the trustee, relying on the estate preservation theory, argued that the appreciation in the debtor's residence belongs to the bankruptcy estate, citing *Tarby* and *Barbosa*. The debtor prefers the estate termination approach.[3]

However, this court too, finds that the estate replenishment approach best harmonizes sections 1306(a) and 1327(b). This approach recognizes the mandate of section 1306(a) while interpreting section 1327(b)'s vesting provision as meaning more than the mere possession of property of the estate pursuant to section 1306(b). The court also cannot ignore that section 1327(c) says that the property that has vested back in the debtor under subsection (b) is *free and clear* from any claim or interest of creditors under the plan. To allow the trustee to reach the asset that has vested in the debtor renders section 1327(c) moot and would have the effect of placing the trustee in a position not contemplated by the Bankruptcy Code.

One court criticized the estate replenishment approach as making superfluous section 1322(b)(9), which allows a plan to provide for vesting of property of the estate in the debtor or another entity upon confirmation or at a later time. *In re Fisher*, 203 B.R. 958, 962 (N.D. Ill. 1997). This court disagrees: section 1322(b)(9) merely allows a debtor to change the time and entity in whom the property vests; what vesting means is the same. Property acquired by the debtor after vesting still can refill the property of the estate. Post-vesting property would no longer be protected by the automatic stay (except as to prepetition judgments or liens, 11 U.S.C. § 362(a)(2), (5)), but this is a decision for the debtor to make.

The court prefers the estate replenishment approach over the estate transformation approach, as the latter "reads nonexistent language into the statute by distinguishing between property necessary to consummation of the plan from that which is not." *Baker*, 236 B.R. at 669. While section 1322(a)(1) provides that the plan shall provide for the submission of all future earnings or income "as is necessary of the execution of the plan," 11 U.S.C. § 1322(a)(1), it is not clear how one determines exactly what post-vesting property remains, and what new property becomes, property of the estate. *In re Holden*, 236 B.R. at 162 ("Secondly, it is not clear exactly what becomes property of the estate under this formulation, because debtors, creditors, and the court may differ on exactly which property is 'necessary' to make plan payments."); *In re Wei-Fung Chang*, 438 B.R. 77, 82 (Bankr. M.D. Pa. 2010) ("Attractive in concept, this approach is difficult to apply in practice."). Property at one time essential to performance of the plan could

---

[3] The debtor cited "R. 32.1(a)" for the proposition that unpublished opinions (e.g., *Tarby*) are not precedential. That is not one of this court's local rules. However, no district-level decisions are binding on this court anyway, regardless of whether published or unpublished. *See In re Stafford Pool & Fitness Ctr.*, 252 B.R. 627, 631 (Bankr. D.N.J. 2000) (stating that while district court cases may be entitled to "substantial deference," they are not binding on bankruptcy court).

become unessential later on. *Id.*, 438 B.R. at 82. This raises automatic stay difficulties. *Id.* How would debtors or creditors know what property is property of the estate? *Id.*

Applying the estate replenishment approach to the facts at hand, the court decides that the appreciation in the Wenonah Property is not property of the estate after it vested at confirmation. Appreciation cannot be separated from the underlying real estate. One cannot separately pledge, mortgage, hypothecate or liquidate appreciation. One can only mortgage the entire asset: the real estate. Appreciation, itself, therefore, cannot be and is not a separate asset. Likewise, appreciation of real estate is not disposable income.

This court respectfully disagrees with the holding in *Barbosa* that appreciation is an asset separate from the originally-valued real property in a confirmed chapter 13 case. *Barbosa* came to that determination by noting that the proceeds of real property sold in chapter 7 would be property of the estate pursuant to 11 U.S.C. § 541(a)(6):

> Because § 541(a)(6) makes the proceeds and profits of property of the estate also property of the estate, because the Property was property of the estate at the commencement of the case, and because the Debtors are in possession and control of the excess proceeds from the sale of the Property, the Court finds that if the Debtors were to convert their case to a case under Chapter 7 in good faith, a Chapter 7 Trustee would be able to obtain the excess proceeds for distribution to the creditors of the Debtors' estate.

*Barbosa*, 236 B.R. at 554.

But under the replenishment approach, because the Wenonah Property ceased to be property of the estate, the proceeds of its later sale could not become property of the chapter 13 estate. *See In re Shuman*, 277 B.R. 638, 654 (Bankr. E.D. Pa. 2001) (stating that preconfirmation cause of action revested in the debtors pursuant to section 1327(b), therefore "the outcome of this proceeding will have no effect upon the property of the estate which the debtors may retain post-confirmation[.]"). "[T]he revesting provision of the confirmed plan means that the debtor owns the property outright and that the debtor is entitled to any postpetition appreciation. . . . As such, it was no longer property of the estate, so the appreciation did not accrue from estate property." *In re Black*, 609 B.R. 518, 529 (B.A.P. 9th Cir. 2019).[4]

As explained by the court in *Baker*:

> Section 1306(a) still plays an important role in many respects, including bringing those assets under the umbrella of the automatic stay and in determining what assets must be considered in the [best interests of creditors] test analysis at confirmation. Section 1327(b), on the other hand, terminates the estate's rights to

---

[4] *Barbosa* also was concerned that the debtors had undervalued their real property so that they could strip off a second mortgage, characterizing this as "unsavory." *Barbosa*, 236 B.R. at 551. But the secured creditor stipulated to that value the court confirmed the plan based on that stipulation, and the increase in value was not realized until two years later. *Id.*, 542-43 (stipulation signed May 5, 1997, plan confirmed September 23, 1988, and sale proposed February 19, 1999).

> that property. The debtor is then free to spend his wages and deal with his assets however he wishes, so long as he fulfills his plan obligations. Post-confirmation, he does not need to run into the bankruptcy court for approval to trade his car in for a new one or to obtain a home-equity line of credit to repair his plumbing. The plan is the only contract between the debtor and his prepetition creditors. They have no further rights in the debtor's property except those specifically preserved in the plan. § 1327(c). Therefore, the bankruptcy court has no further authority over this property, except to rule on a motion for stay relief or a dismissal motion if the debtor defaults on his plan obligations. And, of course, it continues to have jurisdiction over post-confirmation modification motions until the plan has been completed.

*Id.*, 620 B.R. at 668.

This conclusion ends the dispute if the debtor solely wants to retain the net proceeds of the sale while continuing to make his monthly plan payments according to his confirmed plan, and the trustee were okay with that. However, the debtor proposed in his sale motion to pay his plan off now, in the amount of his original confirmed plan, and the trustee wants 100% of claims paid based upon the equity and/or 11 U.S.C. § 1325(b)(3). Indeed, both of these propositions—reducing time for making or increasing plan payments—require a plan modification under section 1329(a)(1) and (2), and neither the debtor nor the trustee have filed a motion to do so. To be sure, the debtor is adamant that the Motion is not intended to act as a plan modification. *See* Debtor's Brief, Doc. No. 65, p. 3 and the court is not inclined to imply that the Motion, or for that matter, the trustee's opposition serve as a motion to modify the plan. Of course, there may be multiple issues that might need to be addressed when attempting to confirm a modified plan, e.g., determinations of future earnings, good faith, and/or other statutory requirements, but those are purely confirmation issues, and since there is no formal motion to modify the plan, the court declines to go down that rabbit hole today. Instead, the debtor must continue to make the payments required by his confirmed plan as the appreciation in the Wenonah Property is not property of the estate once the property vested at confirmation.

## V.    CONCLUSION

Based on the foregoing, the trustee's objection to the Motion to Sell is denied. If the debtor wants to pay his plan off early, he must file a modified plan. If he is content to continue making monthly payments, he need do nothing. The escrowed proceeds shall be released to the debtor after this opinion becomes a final, non-appealable order.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: August 24, 2021